## DUNN et al. v. HITE et al.

### SYLLABUS BY THE COURT

1. Where A. signs a note as surety for B., payable to C., and gives a chattel mortgage on property owned by him to secure the payment of the note on which he is surety, and B. also gives a chattel mortgage on property owned by him to secure the payment of the note, and later the maturity of the note is approaching, and A. and B. enter into a written contract with C., by the terms of which it is agreed that B. is to sell all his cattle to D. at a given price per head, and payment for the same is to be applied on the note, and A. agrees that, if the money received is not sufficient to pay the note, he will give his individual note, due in six months thereafter, and secure the same by chattel mortgage, and B.'s cattle are sold under the agreement and the money is applied, and there remains a deficiency, and A. refuses to carry out the terms of the subsequent contract, **held,** that the subsequent contract did not supersede and cancel the original note and mortgage, and that C. had a right to proceed by foreclosure thereon.                                                    P. 57

2. Contracts, illegal because opposed to statute, or to public policy, or to good morals, cannot be ratified but contracts obtained by actual fraud, by undue influence, by breach of fiduciary duty, and the like may be confirmed or ratified. If a party possessing the remedial right to have a contract avoided on the ground of fraud has obtained full knowledge of all the material facts involved in the transaction, has become fully aware of its imperfection and of his own rights to impeach it, or ought and might, with reasonable diligence become so aware, and all undue influence is wholly removed, so that he can give a perfectly free consent, and he acts deliberately, and with the intention of ratifying the voidable transaction, then his confirmation is binding, and his remedial right, defensive or affirmative, is destroyed.          P. 57

Appeal from District Court, Lea County; W. A. Dunn, Judge pro tem.

Suit by D. W.. Dunn and another against N. W. Hite and another to foreclose a mortgage. From a judgment of foreclosure, defendant named appeals. Affirmed.

J. C. Gilbert, of Roswell, for appellant.

Reid, Hervey & Iden, of Roswell, for appellees.

### OPINION OF THE COURT.

ROBERTS, C. J.    On November 11, 1916, T. Lonnie Hite was indebted to the firm of Harrison & Dunn in the sum of approximately $40,000, which was represented by a note, secured by a chattel mortgage on cattle owned by the said T. Lonnie Hite. The note and mortgage had been running for some time, and had been hypothecated by Harrison & Dunn with a bank in Kansas City, Mo. T. Lonnie Hite had been indicted for larceny of cattle, and was tried and convicted, and the case was pending on appeal in the Supreme Court. The Kansas City bankers, so Harrison & Dunn represented, were dissatisfied with the security and refused to carry the paper longer. Mr. Harrison, of the firm of Harrison & Dunn, on the date above named, came to Lea county and had a conference with T. Lonnie Hite, and advised him as to the status of the paper and that they would have to have additional security in order to carry it longer. T. Lonnie Hite and Harrison went together to the residence of N. W. Hite, the father of T. Lonnie Hite, accompanied by a notary public, and from the findings of fact made by the court the following may be stated as the facts there occurring:

The situation of the son was explained to the father, and it was represented that the cattle owned by T. Lonnie Hite were amply sufficient to secure the note; that the Kansas City bankers, however, were dissatisfied, and were pressing Harrison & Dunn to take up the paper; that if N. W. Hite, the

father, would sign the note with his son, and give a separate mortgage on cattle owned by the father as additional security, Harrison & Dunn would advance to the father the sum of $1,600, which was necessary to liquidate an outstanding mortgage on the cattle, and that the father would never be called upon to pay any greater sum than the $1,600; that they would give to the father a written agreement to the effect that he would not be required to pay a further sum; that the father signed the note and mortgage, and Harrison started to write on the typewriter their agreement which they were to make, but secured the old gentleman's acquiescence in a delay in preparing it until Harrison returned to Farwell, Tex., at which time he agreed that he would write out the agreement and send it to N. W. Hite. The elder Hite agreed that Harrison should take the note and mortgage with him. Harrison never sent to the father the said agreement.

The above facts were denied by Harrison, and there was also other proof; but, as the court found the facts in accordance with the foregoing, they must be accepted. Early in May, the following year, and shortly before the maturity of the paper, which was to run for six months, Harrison & Dunn, or their agent, visited Lea county and made an agreement, in conjunction with Serris & Tyson, by which Serris & Tyson agreed to buy all the cattle owned by T. Lonnie Hite, included in the mortgage, at a given price per head, and to pay such price upon delivery, which money was to be credited on the note. The following provision of the contract is only important here:

"It is agreed between N. W. Hite and Coe Howard, agent for Harrison & Dunn, that in the event sale of the said T. L. Hite cattle is made by T. L. Hite, as provided herein, and in consideration of N. W. Hite being released from the note and mortgage held by Harrison & Dunn against said cattle, that if there is any deficiency between the amount which said cattle bring and the Harrison & Dunn loan, that the said N. W. Hite agrees to execute a good and sufficient chattel

mortgage on a sufficient number of cattle separately owned by him, to satisfactorily secure the amount of the deficiency, the note to be made bearing date June 4, 1917, due six months thereafter, interest at the rate of 10 per cent. per annum."

The T. Lonnie Hite cattle were gathered and sold according to the terms of the contract, and the amount realized was insufficient to satisfy the note and mortgage by something like $8,000; in other words, after applying the selling price of the T. Lonnie Hite cattle, the total obligation of the Hites then outstanding, including the $1,600 owed by the father, amounted to approximately $8,000. The elder Hite refused to pay this sum, and suit was brought against both the Hites to foreclose the mortgages given to secure the indebtedness. It was alleged that T. Lonnie Hite owned a very small number of cattle not applied toward the payment of the indebtedness, which it was sought to subject thereto, and to recover the balance from the father under his mortgage. From the judgment foreclosing the mortgage against N. W. Hite, he appeals.

In his answer to the complaint in the foreclosure suit, N. W. Hite set up the facts as to the execution by him of the original mortgage, and claimed that he should be relieved from liability, save and except the $1,600, on the grounds (1) that there had been no delivery of the note and mortgage, and (2) that he had been induced to enter into the contract by fraud and deceit. The appellees replied, setting up the subsequent contract, and alleging that, by reason of the recitals therein contained and the acts taken thereunder, appellant was estopped from setting up the defense. The court, from the facts, concluded as a matter of law that Hite, by his act in signing the subsequent contract, recognized the note as a subsisting obligation of his own and waived all defenses against it. There are several questions argued, but a consideration of only two is essential to a disposition of the case.

[1]   First, it was argued that the second contract
had the effect to completely supersede and take the
place of the original note and mortgage, and that
the suit should have been brought for specific per-
formance of the second contract.   This contention,
however, is without merit, as a reading of the lan-
guage above quoted from the contract will show.
Such contract was executory, and only upon com-
pliance therewith by the Hites could they have
claimed cancellation of the original note and
mortgages.   If they had delivered the cattle, and N.
W. Hite had executed the new note and mortgage
for the deficiency, as he agreed to do, then clearly
the original note and mortgage would have become
of no force and effect; in other words, would have
been satisfied.

The next question is as to the effect of the subse-
quent contract upon the original note and mortgage
executed by N. W. Hite.   According to the findings
of the court, appellant had the right originally to
have avoided, or to have set aside, the note and
mortgage on the ground of fraud.   Did he lose that
right by the subsequent contract, in which he recog-
nized the original note and mortgage as valid and
subsisting, and his liability thereon?

[2]   Appellant argues that the original contract
was not subject to confirmation, in that it was il-
legal, because obtained in contravention of the
statutes of this state; but there is no merit in this.
The rule is that contracts, illegal because opposed to
statute, or to public policy, or to good morals, cannot
be ratified, because the ratification itself would be
equally opposed to statute, good morals, or public
policy; but contracts obtained by actual fraud, by
undue influence, by breach of fiduciary duty, and
the like, may be confirmed or ratified, because the
parties alone are concerned.   See note to section 964,
Pom. Eq. Jur.   The rule on the subject of confirma-

tion or ratification of a voidable contract is stated by Mr. Pomeroy (2 Pom. Eq. Jur. § 964) as follows:

"Where a party originally had a right of defense or of action to defeat or set aside a transaction on the ground of actual or constructive fraud, he may lose such remedial right by a subsequent confirmation, by acquiescence, and even by mere delay or laches. Wherever a confirmation would itself be subject to the same objections and disabilities as the original act, a transaction cannot be confirmed and made binding for confirmation assumes some positive, distinct action or language, which taken together with the original transaction, amounts to a valid and binding agreement. In general contracts which are void from illegality cannot be ratified and confirmed; contracts which are merely voidable because contrary to good conscience or equity may be ratified, and thus established. If the party possessing the remedial right has obtained full knowledge of all the material facts involved in the transaction, has become fully aware of its imperfection and of his own rights to impeach it, or ought, and might, with reasonable diligence, have become so aware, and all undue influence is wholly removed so that he can give a perfectly free consent, and he acts deliberately, and with the intention of ratifying the voidable transaction, then his confirmation is binding, and his remedial right, defensive or affirmative, is destroyed."

Many cases are cited in support of the text. In the case of Crooks v. Nippolt, 44 Minn. 239, 46 N. W. 349, the court in discussing the subject said:

"The invariable rule is that the right to rescind may be exercised upon discovery of the fraud; that any act of ratification of a contract, after knowledge of facts authorizing rescission, amounts to an affirmance, and terminates the right to rescind."

These authorities, it seems to us, are conclusive upon the question here presented. By the second contract N. W. Hite recognized the validity of the original note and mortgage, and his liability thereon, and the court was right in entering judgment against him.

For the reasons stated, the judgment will be affirmed; and it is so ordered.

PARKER and RAYNOLDS, JJ., concur.